1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

9

| | |
|---|---|
| BRIAN VANDERHEYDEN, individually and on his marital community's behalf; | No. |
| Plaintiff, | COMPLAINT FOR UNPAID WAGES |
| v. | |
| ADT COMMERCIAL, LLC. | |
| Defendant. | |

10
11
12
13
14

Plaintiff Brian VanDerHeyden ("VanDerHeyden") sue Defendant ADT Commercial, LLC ("ADT") and alleges as follows:

### I.     PARTIES

1.1.    VanDerHeyden is a natural person residing in Washington.

1.2.    ADT is a Colorado limited liability company that has its principal place of business in Florida, and is authorized to transact business in Washington State

### II.     JURISDICTION AND VENUE

2.1    This is an action for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. §§201 - 219 ("FLSA"); and an action for unpaid wages pursuant to RCW 49.52.050(2)

15
16
17
18
19
20
21
22
23
24
25
26
27

COMPLAINT – 1

and 49.52.070. This Court has original jurisdiction over the FLSA Action pursuant to 28 USC §1331.

2.2     This Court has jurisdiction over the unpaid wage action pursuant to 28 U.S.C §1441(c).

2.3     This Court also has diversity jurisdiction pursuant to 28 U.S.C. 1332(a)(1) and (2). The amount in controversy, including statutory doubling exceeds $75,000 exclusive of interest, fees, and court costs.

2.4     This Court also has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367

2.5     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Western District of Washington.

### III.     FACTUAL ALLEGATIONS

3.1     In July 2017 VanDerHeyden was employed by Red Hawk Fire & Security, LLC. ("Red Hawk") as a nonexempt employee in the Western District of Washington.

3.2     On July 21, 2017, VanDerHeyden received an offer of employment from Red Hawk's competitor, Johnson Controls, to become employed by one of Johnson Controls' subsidiaries SimplexGrinnel ("Competitor").  This offer included a base salary plus a nondiscretionary bonus he would earn by participating in the Competitor's Annual Incentive Performance Program.

3.3     On August 2, 2017, VanDerHeyden communicated with the Competitor's offer to Red Hawk's Operations Manager and its District General Manager.

COMPLAINT – 2

3.4     On August 3, 2017, Red Hawk made an employment offer to VanDerHeyden to retain him as its Fire Alarm Designer.  Red Hawk's offer agreed to pay VanDerHeyden a base salary plus a nondiscretionary bonus by him participating in Red Hawk's new engineering bonus program that would commence August 1, 2017 ("Red Hawk Bonus Program").

3.5     The Red Hawk Bonus Program was nondiscretionary and required Red Hawk to pay VanDerHeyden seven dollars for every hour he saved on fire alarm projects priced at $25,000 or more that he designed.

3.6     VanDerHeyden accepted Red Hawk's August 3, 2017, employment offer and rejected the Competitor's July 21, 2017, employment offer.

3.7     On August 17, 2017, VanDerHeyden emailed Red Hawk's Operations Manager an initial list of projects he was working on that were eligible for the Red Hawk Bonus Program.  Red Hawk did not object to VanDerHeyden's list of initial projects that he claimed were eligible for the Red Hawk Bonus Program.

3.8     On December 3, 2018, ADT completed its acquisition of Red Hawk.

3.9     On April 6, 2018, VanDerHeyden emailed Red Hawk's Operations Manager with an updated list of projects that he designed that were eligible for the Red Hawk Bonus Program.  Again, Red Hawk did not object to VanDerHeyden's April 6, 2018, list of projects that he claimed were eligible for the Red Hawk Bonus Program.

3.10    On January 23, 2019, VanDerHeyden emailed an updated list of projects to Red Hawk's District General Manager, who was its Operations Manager that VanDerHeyden had been emailing his prior lists of projects to, and its new Operations Manager.

COMPLAINT – 3

3.11    Red Hawk responded to VanDerHeyden's January 23, 2019, email on August 13, 2019, and agreed to set up a meeting to discuss.

3.12    By September 9, 2019, Red Hawk had not set up a meeting with VanDerHeyden to discuss the Red Hawk Bonus Program and the nondiscretionary bonuses he had earned and was going to earn.  Because Red Hawk had not set up the meeting with VanDerHeyden, on that day he sent a follow up email to Red Hawk's District General Manager and Operations Manager that also expressed his frustration that his emails were being ignored.

3.13    Soon after VanDerHeyden sent his September 9, 2019, follow up email, he received an employment offer from Siemens, which was another Red Hawk competitor.

3.14    On September 23, 2019, VanDerHeyden sent a second follow up email for Red Hawk to set up a meeting with him to discuss the Red Hawk Bonus Program and the Siemens offer he had received.  Red Hawk set up a meeting for the following day.

3.15    Red Hawk and VanDerHeyden met on September 24, 2019.  At that meeting Red Hawk agreed to VanDerHeyden's lists of projects and his calculations on the nondiscretionary bonuses that he was entitled to receive.  Red Hawk and VanDerHeyden agreed to pay the nondiscretionary bonuses for the years 2016 and 2017 by October 31, 2019; the nondiscretionary bonuses of the years 2018 by December 31, 2019.  In addition, RedHawk agreed:

    a.   To increase VanDerHeyden's wages to $115,000 annually as a nonexempt hourly employee;

COMPLAINT – 4

WESTERN WASHINGTON LAW GROUP, PLLC
121 Lake Street, Suite 200
Kirkland, WA 48033
425.728.7296   Fax 425.955.5300

b.   VanDerHeyden would continue to participate in the Red Hawk Bonus

Program;

c.   VanDerHeyden would earn a nondiscretionary $2,500 incentive for each high-

rise projects he designed fire alarms for once a permit was issued;

d.   VanDerHeyden would earn a nondiscretionary $2,500 incentive for each high

rise he had worked on that was currently active.  This included the Potala,

Block 18, and Summit III projects.

e.   VanDerHeyden would earn a nondiscretionary $5,000 incentive for the Seattle

Arena project upon the permit being issued.

f.   VanDerHeyden would earn a nondiscretionary $5,000 incentive for the Seattle

Arena project upon completion of the project.

3.16   On September 30, 2019, VanDerHeyden sent an email to Red Hawk's District General Manager and Operations Manager confirming the agreements Red Hawk made at the September 24, 2019, meeting between VanDerHeyden and Red Hawk.  Red Hawk never objected to VanDerHeyden's email confirming the terms of the parties' September 24, 2019, agreement.

3.17   Red Hawk did not pay VanDerHeyden his nondiscretionary bonuses as promised on either October 31, 2019, or December 31, 2019.

3.18   To induce VanDerHeyden from asserting his rights to immediate payment of the nondiscretionary bonuses he had earned for the 2016, 2017, and 2018 projects he designed fire alarms for, Red Hawk's District General Manager sent an email on January 24, 2020, that approved a payout to VanDerHeyden for those nondiscretionary bonuses he had earned on the

COMPLAINT – 5

2016, 2017, and 2018, projects he claimed were eligible for the Red Hawk Bonus Program, and he directed Red Hawk's even newer Operations Manager to fill out the paperwork and have it approved for payment.  This induced VanDerHeyden from claiming those bonuses were due and payable.

3.19    Red Hawk's even newer Operations Manager did not obey Red Hawk's District General Manager's instructions set forth in Paragraph 3.18 of this Complaint.

3.20    By September 8, 2020, ADT had assumed control over Red Hawks operations and was making decision regarding compensation matters.

3.21    On September 8, 2020, VanDerHeyden emailed the individual who was formerly Red Hawk's District General Manager and ADT's Regional Vice President about the bonus situation, and VanDerHeyden received no response from ADT.

3.22    On November 1, 2020, ADT discontinued VanDerHeyden's $700 per month vehicle allowance that he had been receiving without notice to him.

3.23    On January 20, 2021, ADT's District General Manager requested VanDerHeyden provide documentation to support the nondiscretionary bonuses he was claiming he had earned pursuant to the Red Hawk Bonus Program.

3.24    On January 25, 2021, VanDerHeyden emailed ADT's District General Manager the documentation that supported VanDerHeyden's nondiscretionary bonuses he claimed he had earned pursuant to Red Hawk's Bonus Program.

3.25    By February15, 2021, VanDerHeyden had not received a response from ADT regarding his bonus claims, so he sent ADT's District General Manager a follow up email

COMPLAINT – 6

containing updated documentation for additional nondiscretionary bonus claims that he claimed he had earned.

3.26    By June 22, 2021, VanDerHeyden had not received a response from ADT regarding his bonus claims, so he sent ADT's District General Manager a follow up email containing updated documentation for additional nondiscretionary bonus claims that he claimed he had earned.

3.27    Between August 17 and August 25, 2021, Red Hawk's District General Manager sent an email to ADT's Regional Vice President, Controller, and Payroll administrator for the office VanDerHeyden worked in and agreed VanDerHeyden had earned nondiscretionary bonus for project he has submitted lists for, authorized ADT to pay VanDerHeyden an $18,356.63 partial payment toward his 2016 and 2017 projects and the remainder to be paid pending an audit by ADT's Controller.

3.28    On November 9, 2021, VanDerHeyden announced his resignation from ADT effective November 12, 2021.

3.29    All the nondiscretionary bonuses VanDerHeyden had earned prior to the effective date of his resignation became due and payable from ADT to VanDerHeyden on that effective date.

3.30    Since resigning from ADT, VanDerHeyden has emailed ADT's District General Manager at least once and its Regional Vice President at least twice regarding the District General Manager's acknowledgment and agreement to pay the nondiscretionary bonus amounts VanDerHeyden had earned for the projects he listed and supplied to ADT while he was employed there.

COMPLAINT – 7

3.31    All persons making decisions and agreements for Red Hawk or ADT were acting within the scope of their agency when making those decision and agreements. Alternatively, Red Hawk and ADT placed those persons in a position to cause VanDerHeyden to reasonably believe they had the requisite authority and he relied on their apparent agency in accepting their decisions and agreements to be decisions and agreements for the companies they worked for.

3.32    ADT assumed Red Hawk's liabilities for VanDerHeyden's unpaid nondiscretionary bonuses he earned while he was employed by Red Hawk and ADT.

3.33    As a result of ADT's actions, VanDerHeyden is owed at least $40,549.87 in nondiscretionary bonuses for projects he worked on that qualified for the Red Hawk Bonus Program.

3.34    The foregoing amount is based on documents VanDerHeyden was able to access prior to him resigning from ADT.  There are many projects that he was unable to obtain documentation for and the amounts he is owed is substantially greater and will be determined after discovery of the relevant records to make that determination.

3.35    VanDerHeyden is entitled to prejudgment interest on the amounts he is owed.

3.36    VanDerHeyden is entitled to recover his attorney fees and costs for having to commence and pursue this action.

3.37    ADT acted intentionally in withholding the nondiscretionary bonuses that VanDerHeyden had earned, and it is liable for exemplary damages of twice the unpaid nondiscretionary bonuses VanDerHeyden earned.

COMPLAINT – 8

WESTERN WASHINGTON LAW GROUP, PLLC
121 Lake Street, Suite 200
Kirkland, WA 48033
425.728.7296   Fax 425.955.5300

## IV.    FIRST CAUSE OF ACTION: FLSA VIOLATIONS

4.1    VanDerHeyden re-alleges the allegations contained in paragraphs 1.1-3.37 of this Complaint.

4.2    ADT willfully violated the Fair Labor Standard Act of 1938, 29 U.S.C. §201 et. seq ("FLSA") and the promulgations promulgated thereunder.

4.4.    ADT is liable to VanDerHeyden for double damages, prejudgment interest, attorney fees, and costs.

## V.    SECOND CAUSE OF ACTION:  IMPROPER DEDUCTION UNDER WASHINGTON STATE LAW

5.1.    VanDerHeyden re-alleges the allegations contained in paragraphs 1.1-3.37 of this Complaint.

5.2.    ADT violated Washington State Law in Chapters 49.52 and 49.12 RCW.

5.3.    ADT is liable for the damages claimed in this Complaint.

5.4    ADT is liable for the unpaid nondiscretionary bonuses VanDerHeyden earned double exemplary damages, attorney fees, and costs, as provided under RCW 49.52.070, in an amount to be proven at trial.

## VI.    PRAYER FOR RELIEF

Plaintiff VanDerHeyden requests relief against Defendants as follows:

A.    Enter judgment for Plaintiff VanDerHeyden and against Defendant ADT for twice the amount of the unpaid wages, the exact amount to be proven at trial.

B.    That Plaintiff VanDerHeyden  be awarded his reasonable attorney fees and costs, or as otherwise allowed in law or equity;

COMPLAINT – 9

C.     That VanDerHeyden be awarded prejudgment interest on all amounts he should have been paid from the date they should have been paid until judgment at 12% be annual interest;

D.     For such other and further relief as the Court may deem just and proper.

Plaintiff VanDerHeyden Demands a Trial By Jury

DATED:     July 22, 2022.

WESTERN WASHINGTON LAW GROUP, PLLC


_____/s/ Dennis McGlothin_____
Dennis J. McGlothin, WSBA No. 28177
Robert Cadranell, WSBA No. 41773
Attorneys for Plaintiff

COMPLAINT – 10